Lilia N. Tyrrell
KASTING, KAUFFMAN & MERSEN P.C.
716 South 20th Avenue, Suite 101
Bozeman, Montana 59718
(406) 586-4383
(406) 587-7871 facsimile
ltyrrell@kkmlaw.net

*ATTORNEYS FOR PLAINTIFF*

FILED

DEC 0 5 2017

Clerk, U.S. District Court
District Of Montana
Helena

## MONTANA FIRST JUDICIAL DISTRICT COURT
## LEWIS AND CLARK COUNTY
### *******

|  |  |  |
|---|---|---|
| CHADAM, INC. d/b/a, K BAR L RANCH & MEDICINE SPRINGS, | ) ) ) | Cause No. BDV-2017-829 |
|  | ) | CV-17-110-H-SEH |
| *Plaintiff,* | ) | **COMPLAINT AND JURY DEMAND** |
| v. | ) |  |
|  | ) |  |
| ARCH INSURANCE COMPANY, | ) | MICHAEL F MCMAHON |
|  | ) | PRESIDING JUDGE |
| *Defendant.* | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

### Jurisdiction and Venue

1. Chadam, Inc. d/b/a/ K Bar L Ranch & Medicine Springs ("Chadam"), at all times relevant to this matter, was and now is a corporation duly organized and existing under the laws of the State of Montana, authorized to do business and doing business in the State of Montana.

2. Upon information and belief, Arch Insurance Company ("Arch"), at all times relevant to this matter, was and now is a corporation organized under the laws of the State of Delaware, doing business as an insurer in the State of Montana.

3.  Chadam operates the K Bar L Ranch & Medicine Springs ("K Bar L"), a guest ranch located at 22025 Sun Canyon Road in August, Lewis and Clark County, State of Montana.

4.  K Bar L is a guest ranch located within the Bob Marshall Wilderness Area (the "Bob Marshall").  The ranch is only accessible via horseback, by foot or by boat (from June-July).

5.  K Bar L offers an all inclusive stay with lodging, food service, backpacking, trail rides, fishing and hunting adventures.

6.  In exchange for substantial premiums, Arch Insurance, through its insurance agent, The Leavitt Group, sold Chadam annual liability insurance policies to cover loss at the K Bar L.

7.  Chadam purchased an insurance policy from Arch effective in the fall of 2015 insuring various aspects of the operations of K Bar L.  A true and correct copy of the insurance policy is attached hereto as Exhibit 1.

8.  Jurisdiction is proper in the First Judicial District Court, Lewis and Clark County, as the insured property and business is located within the State of Montana and Lewis and Clark County.

## The Insurance Policy

9.  Amongst other items, the insurance policy provides coverage for loss of business income and extra expenses incurred when the action of a civil authority prohibits access to K Bar L because of dangerous physical conditions ("Civil Authority Coverage"). *Id.* at CHADAM000084-92.

10. The Civil Authority Coverage commences for business income "72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began." *Id.* at CHADAM000085, ¶5(a).

11. Civil Authority Coverage commences for extra expenses immediately after the time the civil authority prohibits access to K Bar L and ends four weeks after the date of that action or when Civil Authority Coverage for business income ends, whichever is later. *Id.*

12. Business income loss means the "Net Income … that would have been earned or incurred; and continuing normal operating expenses incurred, including payroll" had the closure by civil authority not occurred. *Id.* at CHADAM000084, ¶A (1).

13. Extra expenses are defined as necessary expenses incurred by Chadam caused by the action of civil authority that prohibits access to the property. *Id.* at CHADAM000085, ¶5(a).

## **August 2015 Wildfire and Claim**

14. In August 2015, wildfires broke out in the Bob Marshall which resulted in the National Forest Service ordering the evacuation of the area surrounding and containing the K Bar L and closing access to portions of the Bob Marshall which provide access to the K Bar L from late August through October 2015.

15. The National Forest Service permitted Chadam to return to the K Bar L with guests for a few limited periods within this timeframe when the wildfire was contained within the area.

16. The National Forest Service prohibited access to the K Bar L starting in late August 2015. Closures then occurred again from September 10-13, and as acknowledged by

Arch, when the "fires sparked back up" the National Forest Service prohibited access to

the K Bar L from September 26, 2015 to October 7, 2015. <u>Exhibit 2</u>, Email between

Freda Armour and Adam Wallis dated June 10, 2016.

17. The National Forest Service continued to manage access to the K Bar L through late

October 2015 as management of wildfire continued.

18. During those times where access into the Bob Marshall and the K Bar L was being

managed by the National Forest Service, Chadam was forced to close operations of the

ranch under mandatory evacuation orders during hunting season – one of the ranch's

busier seasons.  This resulted in the cancellation of sixteen guests booked to stay at the K

Bar L during this timeframe.

19. Additionally, Chadam employees and independent contractors engaged in significant

extra work during time periods when access to the ranch was prohibited to prevent further

business income and structure loss at the ranch by creating fire lines to prevent spread of

the wildfire, moving livestock from vulnerable areas to safer pastures, and setting up,

maintaining and fueling water pumps to combat the wildfire

20. Chadam filed a claim with Arch for the business income lost due to cancellation of guests

at the ranch and for the extra expenses incurred to reduce further business income loss on

December 15, 2015 after resolution of the wildfire at the ranch.  <u>Exhibit 3</u>, Email from

Adam Wallis to Pat Greany, dated December 15, 2015.

### **Unreasonable Delay by Arch**

21. Despite the fact that Chadam filed its claim in December 2015, Arch, did not review and

offer Chadam its initial proposed coverage amounts until June 10, 2016.  <u>Exhibit 2</u>.

22. Pat Greany, an agent for Arch Insurance Policy, sold Chadam the policy.  In an email to Adam Wallis, of Chadam, he stated "I do believe it took an extreme amount of time to get this processed and I too am disappointed…it seemed to take [Arch] a long time to sort thru this." Exhibit 4, Email from Pat Greany to Adam Wallis, dated June 17, 2016.

23. Arch's delay continued for nearly an additional year, as different adjusters and lawyers became involved in the case.  As new Arch agents worked on the case, Chadam was forced to re-tell the same story and provide the same documentation to the new agents.

### Imposition of Two 72-Waiting Periods

24. In its initial June, 2016 response, Arch stated that although the closure of access to K Bar L resulted from the same fire that "sparked back up", Arch considered the instances two occurrences and imposed two separate 72 hour waiting periods before business income losses would be reimbursed.  Exhibit 2.

25.  Arch asserted this position even though the closures were mere days apart and occurred as part of the National Forest Service's ongoing management of the wildfire in and around the Bob Marshall.

26. The insurance policy provides that reimbursement for business income loss begins 72 hours after the first act of civil authority preventing access to the property and like payment for extra expenses "will apply for a period of four consecutive weeks from the date on which such coverage began." Exhibit 1 at CHADAM000085, ¶5(a).

27. Under the terms of the policy, an initial 72 hour waiting period applied to the business income loss due to a closure on September 10, 2015 and continued for four weeks, covering the continued closure through October 7, 2015. *Id.*

28. Pat Greany, an agent for Arch, stated that treating the claim "as two claims makes no sense to me." Exhibit 4.

## Denial of Extra Expenses Claims

29. The business income insurance coverage additional covers extra expenses as defined above. The extra expense coverage begins immediately upon closure of the K Bar L by civil authority and expenditures of extra expenses related to the same. Exhibit 1 at CHADAM000085, ¶5(a).

30. Arch denied coverage of the $11,800 in wages (categorized as extra expenses under the policy) that Chadam paid to employees and independent contractors for work undertaken during the fires to prevent further business income loss based initially on an alleged lack of documentation. Exhibit 2.

## Arch's Continued Delays and Difficulty in Resolving the Claim

31. Throughout the summer of 2016, Chadam attempted to work with Arch Insurance to provide the company requested documentation in order to obtain coverage on the extra expenses and understand Arch's position on its imposition of two 72 hour waiting periods.

32. On September 22, 2016, counsel for Chadam sent a letter to Arch providing additional documentation on the extra expenses and asked Arch to identify the provisions of the insurance policy Arch was relying on to deny the additional coverage and implement two 72 hour waiting periods. Exhibit 5, Letter from Lilia N. Tyrrell to Freda Armour, dated September 22, 2016.

33. Rather than provide an answer to Chadam for the information requested in the letter, Arch engaged a months-long effort to mire the claims process in superfluous and repetitive requests for further documentation or explanations.

34. In one month, Arch asked for more detailed payroll records, representing that it needed only that information to process the claim. When that was provided, Arch asked for a more detailed explanation of the work conducted by the employees, stating that this was in fact the information needed to process the claim. Chadam provided both to Arch.

35. On November 7, 2016, Chadam's counsel again asked Arch for the provisions it was relying on to deny coverage and impose an additional 72-hour waiting period. Arch responded the request was "under review." Exhibit 6, Email exchange between Lilia N. Tyrrell and Freda Armour, dated November 8, 2016. Arch did not provide the requested answers.

36. In January 2017, without an answer to the questions posed to it in the September 22, 2016 letter and follow up request, Arch sent an additional ten questions regarding the claim, some of which had been answered months before by Chadam in previous correspondence or some which were unrelated to the claim. Exhibit 7, Email from Freda Armour to Lilia N. Tyrrell dated January 5, 2017.

37. Chadam remained in the dark as to what provisions of the insurance policy under which Arch was denying coverage.

38. On January 11, 2017, Chadam answered the additional and repetitive questions posed by Arch in an effort to obtain coverage on his claims. Exhibit 8, Letter from Lilia N. Tyrrell to Freda Armour dated January 11, 2017.

39. At this time, Arch notified Chadam that a new adjuster was assigned to the claim, Susan Rogers. Exhibit 9, Email from Susan Rogers to Lilia N. Tyrrell dated January 8, 2017.

40. While Ms. Rogers acknowledged that two 72 hour waiting periods should not have been applied to the claim, for the first time in the year of negotiating the claim, Ms. Rogers raised an entirely new reason for denying part of the extra expenses claim, stating the date of loss was September 10, 2017 rather than August 25, 2017, as claimed by Chadam. Exhibit 10, Email from Lilia N. Tyrrell to Susan Rogers, dated January 20, 2017.

41. Chadam requested the basis for the assertion that the date of loss occurred on September 10, in a phone call on January 17, 2017. Ms. Rogers asserted she would provide the basis for that claim the following day. It was not provided to Chadam until February 2017. *Id.*

42. At some point prior to February 6, 2017, Arch obtained counsel in Florida to negotiate the claim with Chadam. The attorney, John Garaffa, is not licensed to practice in Montana and was unfamiliar with Montana law.

43. On February 6, 2017, Chadam received a letter from John Garaffa finally providing an explanation of the coverage under the claim, over one year after submitting the claim. Exhibit 11, Letter from John Garaffa to Lilia N. Tyrell dated February 6, 2017 (settlement offer redacted).

44. In the letter, Arch through its counsel, asserted that the first closure of access to the K Bar L occurred on September 10, 2015, and continued to assert the re-evacuation which occurred on September 26, 2015 due to the same fire re-igniting, was a second occurrence under the policy. *Id.* at 1.

45. Arch had been advised repeatedly by Chadam that access to the K Bar L had been prohibited prior to September 10, 2015 and again provided the notification of earlier

closures to Arch after receipt of the February 6, 2015 letter. <u>Exhibit 12</u>, Email from Lilia N. Tyrrell to John Garaffa, February 23, 2017.

### <u>Arch's Improper Settlement Negotiations</u>

46. Arch and Chadam attempted to engage in settlement negotiations at this point regarding the claim.  During these settlement negotiations, Arch contended it just learned that K Bar L was an inholding within the Bob Marshall and stated "[i]f Arch had aware (*sic*) that closure of certain trails could block all access to the property, the claim would have been denied in its entirety." <u>Exhibit 13</u>, Email from John Garaffa to Lilia N. Tyrrell, dated March 26, 2017.

47. Arch was aware, through its agent Pat Greany, that the K Bar L was an in holding within the Bob Marshall prior to issuing the insurance policy.

48.  Chadam requested clarification from Arch, on this new position a year and a half after attempting to resolve the claim, that the K Bar L's status as an inholding would preclude coverage of the claim.  <u>Exhibit 14</u>, Email from Lilia N. Tyrrell to John Garaffa, dated April 6, 2017.

49. Arch's counsel told Chadam he would "check with Arch and advise." <u>Exhibit 15</u>, Email from John Garaffa to Lilia N. Tyrrell, dated April 6, 2017.

50. Meanwhile, Chadam and Arch continued attempts to settle the claim and came to agreement on a settlement amount in late April 2017.  However, Arch improperly required Chadam to release both the coverage claims as well as potential claims under the UTPA or bad faith claims in order to settle the claim.

51. On April 20, 2017 and May 2, 2017 Chadam advised Arch of the Montana Unfair Trade Practices Act prohibiting this type of leverage and advised Arch to seek Montana counsel

on the matter.  <u>Exhibit 16,</u> Email from Lilia N. Tyrrell to John Garaffa, dated April 20, 2017 and <u>Exhibit 17</u>, Email from Lilia N. Tyrrell to John Garaffa, dated May 2, 2017.

52. After settlement discussion broke down, Chadam again asked for clarification on why Arch was denying the claims.  Chadam explained it had provided documentation to refute the false allegations made in Arch's February 6, 2017 letter.  <u>Exhibit 18</u>, Email from Lilia N. Tyrrell to John Garaffa, dated May 18, 2017.

53. Arch only stated "Arch's expert has advised it that the additional information provided was insufficient to establish entitlement to any additional payments under the policy." <u>Exhibit 19</u>, Email from John Garaffa to Lilia N. Tyrrell, dated May 24, 2017.

54. Chadam asked again for Arch to explain why the K Bar L's status as an inholding precluded coverage, despite Arch's knowledge that K Bar L was an inholding prior to issuing the policy.  <u>Exhibit 18</u>.  Arch provided no response to this request.

55. Arch continues to refuse to pay Chadam for its claim of extra expenses incurred after the closure of access to the K Bar L and incurred to prevent further loss to the business remain.  Further, because Arch has continued to improperly impose two 72 hour waiting periods, Arch has continued to refuse to pay Chadam business income loss related to guest cancelations in late September.

## COUNT I: DECLARATORY ACTION

56. Chadam realleges and incorporates by reference each and every of the preceding allegations contained in this Complaint.

57. Arch has denied coverage for certain portions of the Chadam's claim regarding the 2015 wildfires.  Arch asserts that two 72-hour waiting periods should be applied to the policy and that the policy will not cover the extra expenses claimed by Chadam.

58. Chadam denies that coverage is disputed.  The policy is clear that two 72-hour waiting periods should not be assessed and the extra expenses are covered under the policy.

59. Chadam seeks a declaration form the court that only one 72 hour waiting period should be assessed for the business income losses and the entirety of Chadam's claimed extra expenses are covered under the policy.

60. Chadam should be awarded its attorney's fees and costs incurred in this matter.

### COUNT II: UNFAIR TRADE PRACTICES ACT

61. Chadam realleges and incorporates by reference each and every of the preceding allegations contained in this Complaint.

62. The Unfair Trade Practices Act, § 33-18-101, *et seq.*, MCA ("UTPA"), "regulates the trade practices in the business of insurance in accordance with the intent of congress…" *Id.*

63. As a provider of insurance in the State of Montana, Arch is obligated to abide by the provisions of the UTPA.

64. Arch has violated the UTPA by:

   a.   Misrepresenting pertinent facts or insurance policy provision relating to coverage;

   b.   Failing to acknowledge and act reasonably promptly with respect to the claim;

   c.   Failing to adopt and implement reasonable standards for the prompt investigation of the claim;

   d.   Refusing to pay the claim without conducting a reasonable investigation into the claim;

   e.   Failing to affirm coverage within a reasonable time after proof of loss statements were provided;

    f.   Neglecting to attempt, in good faith to effectuate a prompt and fair settlement of the claims;

    g.   Failing to promptly settle claims, when liability was reasonably clear, under one portion of the policy, in order to influence settlement under other portions of the insurance policy; and

    h.   Failing to promptly provide a reasonable explanation of the basis in the insurance policy for a denial of the claim.

65.  Because of Arch's repeated violations of the UTPA, Chadam has been damaged by in an amount to be proven at trial.

### COUNT III – BREACH OF CONTRACT

66. Chadam realleges and incorporates by reference each and every of the preceding allegations contained in this Complaint.

67. Chadam and Arch are parties to a contract – the insurance agreement - effective at all times relevant to this matter.

68.  Chadam performed its obligations under the insurance agreement, including paying its premiums and adhering to the claims reporting process.

69. Arch has breached the agreement by failing to pay Chadam for its reasonable claims related to the wildfires in the fall of 2015.

70. As a result of this breach, Chadam has been damaged by in an amount to be proven at trial, including its attorney's fees and costs.

### COUNT IV– PUNITIVE DAMAGES

71. Chadam realleges and incorporates by reference each and every of the preceding allegations contained in this Complaint.

72. Arch acted with actual malice in violating the provisions of the UTPA, and accordingly

Chadam is entitled to punitive damages for the violations pursuant to § 33-18-242, MCA.

## COUNT V– ATTORNEYS FEES AND COSTS

73. Chadam realleges and incorporates by reference each and every of the preceding

allegations contained in this Complaint.

74. Chadam was required to retain the services of an attorney to commence this action, and

accordingly is entitled to attorney's fees pursuant to the insurance exception to the

Americcan rule.

WHEREFORE, Plaintiff, Chadam, Inc. prays as follows:

1. The Court declares that two 72 hour waiting periods may not be imposed by Arch and the

entirety of the extra expenses claimed by Chadam are covered under the insurance policy;

2. Judgment be entered in its favor and against Arch for its claims of Unfair Trade Practices,

and breach of contract;

3. For an award of damage, in an amount to be proven at trial, for its claims of Unfair Trade

Practices, and breach of contract;

4. For an award of punitive damages in an amount to be determined by the jury;

5. For reasonable attorney's fees, costs and disbursements incurred herein;

6. For such other and further relief as the Court may deem just.

RESPECTFULLY SUBMITTED this ⟨2⟩ᵗʰ day of October, 2017.

_____
Lilia N. Tyrrell
Kasting, Kauffman & Mersen
716 S. 20ᵗʰ Avenue
Bozeman, MT 59718

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all issues be tried to a jury as provided by law.

DATED this 2nd day of October, 2017.

Lilia N. Tyrrell
Kasting, Kauffman & Mersen
716 S. 20th Avenue
Bozeman, MT 59718